FARHANG & MEDCOFF
ATTORNEYS
100 South Church Avenue, Suite 100
Tucson, Arizona 85701
T: 520.214.2000
F: 520.214.2001

Ali J. Farhang (#019456)
afarhang@farhangmedcoff.com
Roscoe J. Mutz (#030696)
rmutz@farhangmedcoff.com
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

MiCamp Solutions, LLC, an Arizona limited liability company,

Plaintiff,

v.

PayStream, LLC, a Nevada limited liability company; Jeremy Fried and Nicole Fried, a married couple; Robert McDonald and Angelita McDonald, a married couple; Black and White Entities 1-10; John and Jane Does 1-10,

Defendants.

Case No. 2:23-CV-01842-ROS

**FIRST AMENDED COMPLAINT**

Plaintiff MiCamp Solutions, LLC ("MiCamp"), hereby amends its Complaint against Defendants PayStream, LLC, Jeremy Fried and Nicole Fried, and Robert McDonald and Angelita McDonald (collectively, "Defendants"), and states as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff MiCamp Solutions, LLC is an Arizona limited liability company, whose principal place of business is in Maricopa County, Arizona.

2. On information and belief, Defendant PayStream, LLC ("PayStream") is a Nevada limited liability company, whose principal place of business is in Las Vegas, Nevada but who contracted with MiCamp in Maricopa County, Arizona.

FARHANG & MEDCOFF ATTORNEYS

3. On information and belief, Defendants Jeremy Fried ("Fried") and Nicole Fried are a married couple, domiciled in Nevada but performing work for MiCamp's benefit in Arizona. At all times relevant to this action, Fried acted for and on behalf of his marital community. Nicole Fried is a named defendant for marital community property purposes.

4. On information and belief, Defendants Robert McDonald ("McDonald") and Angelita McDonald are a married couple, domiciled in Nevada but performing work for MiCamp's benefit in Arizona. At all times relevant to this action, McDonald acted for and on behalf of his marital community. Angelita McDonald is a named defendant for marital community property purposes.

5. Defendants BLACK AND WHITE ENTITIES 1-10 are unknown business entities or trusts that bear some or all responsibility for the claims and/or allegations made herein.

6. Defendants JOHN DOES 1-10 and their spouses are unknown persons that may bear some or all responsibility for the claims and/or allegations made herein.

7. Jurisdiction and venue were proper when MiCamp filed its initial Complaint pursuant to A.R.S. §§ 12-123 and 12-401. Upon Defendants' removal to this Court, jurisdiction and venue are proper pursuant to 28 U.S.C. § 1332. Jurisdiction and venue are also proper in this Court pursuant to that certain MiCamp Solutions, LLC Independent Contractor Agreement - ISO dated March 21, 2021 and executed by MiCamp and PayStream (the "ISO Agreement"), which expressly states: "Any legal actions or proceedings brought to enforce the terms of this Agreement shall be filed in a court of competent jurisdiction within such county where MICAMP has its principal place of business identified on the first page hereof [Maricopa County, Arizona]." A copy of the ISO Agreement is attached as **Exhibit 1**.

## GENERAL ALLEGATIONS

8. MiCamp expends considerable time, expense, and effort to market and

FARHANG & MEDCOFF
ATTORNEYS

develop relationships with customers, vendors, and merchants so that those customers, vendors, and merchants continue to return to MiCamp for their payment processing needs. MiCamp's relationships with its customers, vendors, and merchants are significant and valuable business assets of MiCamp.

9. MiCamp also expends considerable time, expense, and effort to build its business reputation and goodwill with clients and the general public. MiCamp's business reputation and goodwill are significant and valuable assets of MiCamp.

10. Fried and McDonald are former employees of MiCamp. During their employment with MiCamp, Fried and McDonald owed MiCamp a fiduciary duty of loyalty. This duty, which arises from Arizona common law, precludes employees from, among other things, competing with their employer, taking business opportunities, using employer time and resources for activities that harm (or do not benefit) MiCamp, soliciting customers, sabotaging MiCamp's customer relationships, and misappropriating MiCamp confidential and/or trade secret information for either personal use or gain or the use and gain of a competitor.

11. On information and belief, Fried and McDonald breached their fiduciary duty of loyalty to MiCamp by, among other things, engaging in acts of competition with MiCamp, using MiCamp resources to benefit themselves or a competitor, sabotaging MiCamp's customer relationships, soliciting MiCamp's customers, and misappropriating MiCamp confidential and/or trade secret information while Fried and McDonald were employed by MiCamp.

12. Fried was the Chief Technology Officer for MiCamp. As the Chief Technology Officer, Fried was in a senior-level position of high confidence and trust and had access to sensitive and highly-confidential business and technology information, including internal electronic communications, financial information, and other trade secret information. Such information, which is also a trade secret under Arizona law or confidential information kept confidential by MiCamp but not rising to the level of a trade secret, had and has significant value to MiCamp and MiCamp's competitors. Such

information would enable or otherwise make it substantially easier for a competitor to raid MiCamp's existing business relationships and improperly obtain a larger market share vis-à-vis unfair poaching of MiCamp's business and business opportunities.

13. McDonald was the Director of Software Engineering for MiCamp. As the Director of Software Engineering, McDonald was in a senior-level position of high confidence and trust and had access to sensitive and highly-confidential business and technology information, including internal electronic communications, financial information, and other trade secret information. Such information, which is also a trade secret under Arizona law or confidential information kept confidential by MiCamp but not rising to the level of a trade secret, had and has significant value to MiCamp and MiCamp's competitors. Such information would enable or otherwise make it substantially easier for a competitor to raid MiCamp's existing business relationships and improperly obtain a larger market share vis-à-vis unfair poaching of MiCamp's business and business opportunities.

14. At all material times during their employment, Fried and McDonald represented to MiCamp that they were model employees, but omitted the material facts that they engaged in acts of competition, used MiCamp resources to benefit themselves or a competitor, sabotaged MiCamp's customer relationships, soliciting MiCamp's customers, or misappropriated trade secret, proprietary, and/or confidential information so that they could later take it to a competitor. Fried and McDonald knew that at the time they engaged in these deceptive activities, MiCamp had no reason to believe that Fried or McDonald were anything but model employees abiding by their fiduciary duty of loyalty. MiCamp had a right to rely upon the fiduciary duty of loyalty and suffered damages as a direct result of Fried and McDonald's actions described herein.

15. On information and belief, after leaving MiCamp, Fried retained possession of MiCamp's confidential and trade secret information, including hard drives, external storage devices, cloud storage copies (i.e., DropBox, Google Drive, iCloud, etc.) or other physical or digital copies. On information and belief, Fried used MiCamp's confidential

and trade secret information to benefit himself, affiliated companies, and/or competitors of MiCamp to MiCamp's detriment.

16. On information and belief, after leaving MiCamp, McDonald retained possession of MiCamp's confidential and trade secret information, including hard drives, external storage devices, cloud storage copies (i.e., DropBox, Google Drive, iCloud, etc.) or other physical or digital copies. On information and belief, McDonald used MiCamp's confidential and trade secret information to benefit himself, affiliated companies, and/or competitors of MiCamp to MiCamp's detriment.

17. On information and belief, while MiCamp employed McDonald, Fried solicited McDonald to provide work for a third party, Service First Processing. On information and belief, McDonald utilized MiCamp's time and resources to provide services to Service First Processing.

18. On or about March 21, 2021, Fried voluntarily signed the ISO Agreement on behalf of PayStream. MiCamp and PayStream are collectively referred to as the "Parties" to the ISO Agreement.

19. Pursuant to the express terms of the ISO Agreement, MiCamp provided PayStream with merchant applications and fees and residuals. *See* Ex. 1, ISO Agreement, ¶ 2.

20. MiCamp performed its obligations under the ISO Agreement.

21. PayStream contracted to solicit applications from merchants to exclusively use MiCamp services. *See* Ex. 1, ISO Agreement, ¶¶ 1.1, 1.2.

22. PayStream also promised to perform its obligations honestly and in a good workmanship manner, with professional diligence and demeanor. *See* Ex. 1, ISO Agreement, ¶ 1.8.

23. PayStream also promised that during the term of the ISO Agreement and for a period of two (2) years thereafter, PayStream (or its affiliates) shall not directly or indirectly engage in (or permit or assist any third party to engage in) the following conduct: (i) call on, solicit, take away, or attempt to call on, solicit, or take away any of the

FARHANG & MEDCOFF
ATTORNEYS

merchants or customers of MiCamp, whether boarded by PayStream or not; or (ii) entice, induce, or in any manner influence any person or entity who is, or shall be in the direct or indirect service of MiCamp to leave the same for the purpose of engaging in a business or being employed by or associated with any other business. *See* Ex. 1, ISO Agreement, ¶ 4.1.

24. On information and belief, at all relevant times Fried was the alter ego of PayStream. On information and belief, the alter ego relationship between PayStream and Fried is supported because, *inter alia*, Fried controlled PayStream, Fried acted on his own in business dealings on PayStream's behalf, Fried controlled PayStream and made business decisions that were in Fried's own best interests, and PayStream was a mere conduit for Fried's business ventures.

25. On information and belief, PayStream was a mere instrumentality for Fried's own business affairs and there is unity of interest between PayStream and Fried such that the separate personalities of PayStream and Fried do not exist.

26. Justice requires recognizing the substance of the relationship between PayStream and Fried over their legally separate forms to prevent injustice and/or fraud. An equitable result is achieved by disregarding the corporate form and holding Fried personally liable for PayStream's conduct including interactions with MiCamp.

27. On information and belief, Fried formed other affiliated entities (the "Affiliated Entities") to fraudulently transfer PayStream assets to avoid payment of liabilities owed to MiCamp, unlawfully attempt to shield Fried and PayStream from liability, and to act in breach of the ISO Agreement and other agreements between the Parties, and to violate common law duties owed to MiCamp. MiCamp reserves the right to amend this Complaint to add the Affiliated Entities and additional causes of action as discovery progresses in this action.

28. PayStream also promised that it, and all its affiliated companies, agents, employees, successors in interest or assigns, would not, during the ISO Agreement's term and for a period of two (2) years after the termination of the ISO Agreement, engage in

Non-Circumvention Conduct with third parties, including, without limitation, suppliers, customers, financial sources, manufacturers, consultants, that have been disclosed to PayStream or the Affiliated Entities, directly or indirectly, by MiCamp. "Non-Circumvention Conduct" is defined in the ISO Agreement as contacting, discussing, or transacting business with such third party for the purpose of competing with or preplacing the services of the other party, without the prior knowledge and written consent of MiCamp. *See* Ex. 1, ISO Agreement, ¶ 4.2.

29. PayStream also promised and acknowledged that the names and addresses of MiCamp's (or MiCamp's sponsoring banks or processors) Merchants (those MiCamp had independent of PayStream's referrals) and all other Confidential Information [defined at ¶ 5.1(a) of the ISO Agreement] relating to those Merchants and customers, including but not limited to account numbers, leasing information, financial information and special needs, are provided in confidence and constitute trade secrets of MiCamp and that the sale or unauthorized use or disclosure of any of MiCamp's trade secrets obtained by PayStream or its Affiliated Entities during its association with MiCamp constitutes unfair competition. *See* Ex. 1, ISO Agreement, ¶ 5.1(d).

30. PayStream agreed that it shall indemnify and reimburse MiCamp for losses, liabilities, damages, costs, and expenses (including all costs and reasonable attorney's fees) actually incurred by reason of any fraudulent or dishonest conduct or misrepresentation of PayStream or any Affiliated Entities or any breach by PayStream of the terms of the ISO Agreement. *See* Ex. 1, ISO Agreement, ¶ 7.1.

31. The Parties also agreed that as a consequence of any action, suit, or proceeding brought under the ISO Agreement, the prevailing party shall be entitled to its costs, expenses, and if law permits, its reasonable attorney's fees. *See* Ex. 1, ISO Agreement, ¶ 9.8.

32. The Parties agreed that the ISO Agreement shall be governed by and will be construed in accordance with the laws of the State of Arizona (without applying its conflicts of laws principles). *See* Ex. 1, ISO Agreement, ¶ 9.7.

33. On or about May 27, 2021, PayStream and MiCamp entered into that certain Software Licensing Agreement (the "Software Agreement") related to the licensing of certain source code and/or software called PhoeniXGate, which is a cloud based client-branded payments gateway that enables fast, reliable, and secure payment card processing. PhoeniXGate is owned by Phoenix Managed Networks, LLC ("PMN").

34. On information and belief, prior to May 27, 2021, Fried and PayStream fraudulently misrepresented material terms of the Software Agreement, including without limitation, the accurate purchase price from PMN, the nature of the license being transferred, and prior discussions between Fried/PayStream and PMN regarding MiCamp, Fried, PayStream, Affiliated Entities of PayStream, and McDonald. MiCamp reserves the right to amend this Complaint to add additional causes of action against PayStream/Fried as discovery progresses in this action.

35. Defendants, and each of them, are liable to MiCamp for all direct, indirect, and consequential damages arising from the violations of rights/duties set forth herein.

**COUNT 1 – BREACH OF DUTY OF LOYALTY / FIDUCIARY DUTY**
**(McDonald)**

36. MiCamp incorporates the foregoing allegations as if fully set forth herein.

37. As an employee of MiCamp, McDonald owed MiCamp a fiduciary duty of loyalty, including a duty to act fairly, honestly, and in good faith in all aspects of his relationship with MiCamp.

38. During the course of McDonald's employment with MiCamp, as part of his duty of loyalty / fiduciary duty to MiCamp, McDonald owed MiCamp a duty not to use MiCamp's equipment, time, and resources for personal gain or to benefit a third party or compete with MiCamp in any manner.

39. As part of McDonald's duty of loyalty / fiduciary duty to MiCamp, McDonald owed MiCamp a duty to act with the care, competence, and diligence normally exercised by employees in similar circumstances.

40. As part of McDonald's duty of loyalty / fiduciary duty to MiCamp,

FARHANG & MEDCOFF
ATTORNEYS

McDonald owed MiCamp a duty to maintain the confidentiality and secrecy of MiCamp's protected, confidential, and/or trade secret information, and to not reveal, divulge, disclose, or convert for their own benefit, or for the benefit of others, said protected, confidential, and/or trade secret information.

41. As part of McDonald's duty of loyalty / fiduciary duty to MiCamp, McDonald owed MiCamp a duty to make primary MiCamp's interests with regard to all matters related to McDonald's employment, and to subordinate his own interests to MiCamp's.

42. On information and belief, while still employed by MiCamp, McDonald breached his duty of loyalty / fiduciary duty to MiCamp by, among other things, competing with MiCamp and using MiCamp time, resources, and equipment for himself or for the benefit of others.

43. On information and belief, while still employed by MiCamp, McDonald breached his duty of loyalty / fiduciary duty to MiCamp by, among other things, misappropriating MiCamp's protected, confidential, and/or trade secret information for personal benefit or the benefit of others.

44. On information and belief, while still employed by MiCamp, McDonald breached his duty of loyalty / fiduciary duty to MiCamp by making primary his business interests and those of others, all to the significant detriment of MiCamp's interests.

45. McDonald benefited from the breach of his duty of loyalty / fiduciary duty to MiCamp. Among other things, those benefits include the salary paid to McDonald during the time MiCamp employed McDonald and McDonald provided services to others, along with lost profits and other ill-gotten financial gains related to the continued, improper use of MiCamp's time, resources, equipment, and confidential and trade secret information, in an amount to be proven at trial.

46. McDonald's conduct in violation of his duty of loyalty / fiduciary duty was and is gross, wanton, malicious, oppressive, and performed with spite, ill-will, and reckless indifference to the interests of others. McDonald's unfair conduct evinces an evil

FARHANG & MEDCOFF ATTORNEYS

hand guided by an evil mind. As a result, McDonald is liable for punitive damages, in addition to all other damages, in an amount to be proven at trial.

**COUNT 2 – VIOLATION OF THE ARIZONA UNIFORM TRADE SECRETS ACT**

**(Fried and McDonald)**

47. MiCamp incorporates the foregoing allegations as if fully set forth herein.

48. MiCamp is the owner of certain trade secret information and is entitled to possession of same exclusive from Fried and McDonald. Such information includes, without limit, customer/merchant lists, customer/merchant information, internal email communications, customer agreements/contracts, MiCamp financial information, and MiCamp services and operational margins. This information derives independent economic value, actual and potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.

49. MiCamp makes commercially reasonable efforts to secure the subject trade secret information. MiCamp does so by, among other things, requiring its employees to execute confidentiality agreements, and by limiting access to such information only to certain employees who may have a MiCamp-related business need for such information.

50. On information and belief, Fried and McDonald violated MiCamp's rights and misappropriated MiCamp's trade secret information.

51. Fried and McDonald's misappropriation of MiCamp's trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

52. Despite knowledge of their wrongdoing, Fried and McDonald failed to return MiCamp's trade secret information.

53. As the direct and proximate result of Fried and McDonald's conduct as alleged herein, MiCamp has suffered significant damage including, without limit, loss of business, lost profits, and loss of goodwill. Pursuant to Ariz. Rev. Stat. §§ 44-403 and 44-404, and other relevant legal provisions, MiCamp is entitled to double damages, including disgorgement of any unjust enrichment gained by Fried and McDonald's

FARHANG & MEDCOFF ATTORNEYS

misappropriation, and its attorneys' fees and costs arising from Fried and McDonald's trade secret misappropriation and misuse.

**COUNT 3 – MISAPPROPRIATION OF CONFIDENTIAL, PROPRIETARY, AND/OR BUSINESS INFORMATION**

**(Fried and McDonald)**

54. MiCamp incorporates the foregoing allegations as if fully set forth herein.

55. MiCamp is the owner of certain confidential, proprietary, and/or business information that does not rise to the level of trade secrets but MiCamp is nonetheless entitled to possession of same exclusive from Fried and McDonald. Such information includes, without limit, customer/merchant lists, customer/merchant information, internal email communications, customer agreements/contracts, MiCamp financial information, and MiCamp services and operational margins. This information derives independent economic value, actual and potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.

56. MiCamp makes commercially reasonable efforts to secure its confidential, proprietary, and/or business information. MiCamp does so by, among other things, requiring its employees to execute confidentiality agreements, and by limiting access to such information only to certain employees who may have a MiCamp-related business need for such information.

57. On information and belief, Fried and McDonald violated MiCamp's rights and misappropriated MiCamp's confidential, proprietary, and/or business information secret information.

58. Fried and McDonald's misappropriation of MiCamp's confidential, proprietary, and/or business information secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

59. Despite knowledge of their wrongdoing, Fried and McDonald failed to return MiCamp's confidential, proprietary, and/or business information secret information.

60. As the direct and proximate result of Fried and McDonald's conduct as alleged herein, MiCamp has suffered significant damage including, without limit, loss of business, lost profits, and loss of goodwill.

61. Fried and McDonald's conduct was and is gross, wanton, malicious, oppressive, and performed with spite, ill-will, and reckless indifference to the interests of others. Fried and McDonald's unfair conduct evinces an evil hand guided by an evil mind. As a result, Fried and McDonald are liable for punitive damages as well as general damages in an amount to be proven at trial.

## COUNT 4 – TORTIOUS INTERFERENCE
**(Fried)**

62. MiCamp incorporates the foregoing allegations as if fully set forth herein.

63. Fried was aware of the existence of an agreement between MiCamp and its former employee, McDonald.

64. Fried was also aware MiCamp had a legitimate business expectancy flowing from its relationship with its employees, such as McDonald.

65. On information and belief, Fried intentionally, maliciously, and improperly interfered with MiCamp's agreement with its employee through the use of, among other things, wrongfully obtained protected, confidential, proprietary, and/or business information , and encouraging McDonald to breach his duty of loyalty / fiduciary duty while he was still employed by MiCamp, including without limitation, soliciting McDonald to perform services for Service First Processing.

66. Fried's interference has caused considerable damage to MiCamp in an amount to be proven at trial; such damages include, but are not limited to, salary paid to McDonald during times he worked for the benefit of himself or others, loss of business, lost profits, and loss of goodwill.

67. Fried's conduct was and is gross, wanton, malicious, oppressive, and performed with spite, ill-will, and reckless indifference to the interests of others. Fried's unfair conduct evinces an evil hand guided by an evil mind. As a result, Fried is liable for

FARHANG & MEDCOFF
ATTORNEYS

punitive damages as well as general damages in an amount to be proven at trial.

**COUNT 5 – UNFAIR COMPETITION**
**(All Defendants)**

68. MiCamp incorporates the foregoing allegations as if fully set forth herein.

69. On information and belief, Defendants are in competition with MiCamp.

70. As explained in further detail elsewhere herein, Defendants used and/or are using misappropriated protected, confidential, proprietary, and/or business information, information gained while they were employed by MiCamp and/or from individuals on MiCamp's payroll and who owed MiCamp a duty of loyalty / fiduciary duty, to compete unfairly with MiCamp in business generally, to direct existing and/or potential customers away from MiCamp, to sabotage existing MiCamp business, and to otherwise gain an unfair competitive advantage over MiCamp, for the benefit of Defendants to the detriment of MiCamp, in violation of law and various duties.

71. Defendants' actions were designed to divert, deceptively and wrongfully, MiCamp's information, employees, beneficial business practices, and business generally from MiCamp to Defendants.

72. Defendants' improper actions have caused unlawful business gains to Defendants at MiCamp's expense.

73. By acting as alleged herein, Defendants acted in a manner that is contrary to honest practice in commercial matters.

74. Defendants' actions constitute unfair competition. Defendants' actions were calculated to injure MiCamp in the marketplace. Defendants' actions are unfair, deceptive, wrongful, and performed with the intent of damaging MiCamp's business interests.

75. Defendants' willful and malicious conduct infringes upon accepted business principles concerning fair dealing, rules of fair play, and good conscience, and lacks any social utility whatsoever.

76. Defendants' conduct has caused and will continue to cause irreparable injury to MiCamp, including but not limited to, loss of business goodwill, as to which monetary

relief alone is insufficient.

77. Defendants' conduct was and continues to be gross, wanton, malicious, oppressive, and performed with spite, ill will, and reckless indifference to the interests of others. Defendants' unlawful and unfair conduct evinces an evil hand guided by an evil mind. As a result, Defendants are liable for punitive damages as well as general damages in an amount to be proven at trial.

**COUNT 6 – CIVIL CONSPIRACY**
**(All Defendants)**

78. MiCamp incorporates the foregoing allegations as if fully set forth herein.

79. On information and belief, Defendants conspired and agreed to accomplish multiple tortious acts, including, without limit, breach of duties of fiduciary duties of loyalty, interference with contractual relationships or business expectancies to compete unfairly, to divert or transfer, surreptitiously and/or fraudulently, MiCamp's current and prospective business and employee relationships, protected, confidential, proprietary, business, and/or trade secret information, and/or clients to, or for the benefit of, the Defendants.

80. On information and belief, Defendants committed the improper acts in furtherance of their conspiracy by, among other things, systematically colluding to solicit and recruit MiCamp employees directly and/or indirectly to perform services for third parties in breach of agreements and other duties/obligations, illicitly conspiring to sabotage MiCamp's existing business, illicitly conspiring to divert MiCamp's protected, confidential, proprietary, business, and/or trade secret information to or for the benefit of themselves, and improperly utilizing such information to gain a competitive advantage in the marketplace.

81. Defendants' civil conspiracy has caused considerable damage to MiCamp in an amount to be proven at trial, which damages include, but are not limited to, loss of business, lost profits, employee recruitment, replacement, and training costs, and loss of goodwill.

FARHANG & MEDCOFF ATTORNEYS

82. Defendants' conduct was and is gross, wanton, malicious, oppressive, and performed with spite, ill will, and reckless indifference to the interests of others. Their improper and unfair conduct evinces an evil hand guided by an evil mind. As a result, Defendants are liable for punitive damages as well as general damages in an amount to be proven at trial.

**COUNT 7 – AIDING AND ABETTING**
**(All Defendants)**

83. MiCamp incorporates the foregoing allegations as if fully set forth herein.

84. On information and belief, Defendants committed unlawful acts and/or torts that have caused damage to MiCamp, as more fully set forth elsewhere herein.

85. Defendants, and any other Defendant acting in concert with them, knew that the unlawful acts and/or torts they were perpetrating (as more fully set forth elsewhere herein) were unlawful and/or constituted a breach of duties owned to MiCamp.

86. Defendants substantially assisted one another, and/or encouraged one another, to achieve the unlawful acts and/or breaches of duties owed to MiCamp. Defendants' substantial assistance with one another caused the unlawful acts and/or torts set forth elsewhere herein.

87. The Defendants, and each of them, are jointly and severally liable to MiCamp for all wrongful conduct complained of herein, due to their aiding and abetting of one another in committing such improper acts.

**COUNT 8 – BREACH OF CONTRACT**
**(PayStream and Fried)**

88. MiCamp incorporates the foregoing allegations as if fully set forth herein.

89. MiCamp and PayStream/Fried entered into a valid and binding contract.

90. MiCamp performed its obligations under the ISO Agreement.

91. On information and belief, PayStream/Fried breached the ISO Agreement by failing or refusing to exclusively solicit merchants to use MiCamp's services.

92. On information and belief, PayStream/Fried breached the ISO Agreement by

FARHANG & MEDCOFF
ATTORNEYS

failing to perform its obligations honestly and in a good workmanship manner, with professional diligence and demeanor.

93. On information and belief, PayStream/Fried breached the ISO Agreement by calling on, soliciting, taking away or attempting to call on, solicit, or take away MiCamp's merchants and customers.

94. On information and belief, PayStream/Fried breached the ISO Agreement by enticing, inducing, and influencing a person or entity who is in the direct or indirect service of MiCamp to leave MiCamp for the purpose of engaging in a business or being employed by or associating with any other business.

95. On information and belief, PayStream/Fried breached the ISO Agreement by engaging in "Non-Circumvention Conduct" as defined by the ISO Agreement.

96. On information and belief, PayStream/Fried breached the ISO Agreement by misappropriating MiCamp's trade secrets and engaging in unfair competition.

97. As a result of PayStream/Fried's breach of the ISO Agreement, MiCamp suffered significant damages in an amount to be awarded at trial.

98. MiCamp is also entitled to an additional award of its attorneys' fees and costs related to claims for breach of contract and the express terms of the Agreement. *See* Ex. 1, ISO Agreement, ¶¶ 7.1, 9.8; see also A.R.S. §§ 12-341.01 (award of attorneys' fees for breach of contract), 12-341 (award of costs); Ex. 1, ISO Agreement, ¶ 9.7 (applying Arizona law as governing law).

**COUNT 9 – BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING**
**(PayStream and Fried)**

99. MiCamp incorporates the foregoing allegations as if fully set forth herein.

100. "In Arizona, a covenant of good faith and fair dealing is implied in every contract." Maleki v. Desert Palms Prof'l Props., LLC, 222 Ariz. 327, 333, 214 P.3d 415, 421 (App. Div. 1 2009).

101. Even if the Court determines PayStream/Fried did not breach any express provision of the ISO Agreement, MiCamp still prevails on the claim for breach of the

FARHANG & MEDCOFF ATTORNEYS

implied covenant of good faith and fair dealing. See Nolan v. Starlight Pines Homeowners Ass'n, 216 Ariz. 482, 489, 167 P.3d 1277, 1284 (App. Div. 1, 2007) ("[a] party may breach the implied covenant [of good faith and fair dealing] even in the absence of a breach of an express provision in a contract by denying the other party the reasonably expected benefits of the agreement.").

102. Based on the written ISO Agreement between the Parties, MiCamp reasonably expected that PayStream/Fried would exclusively solicit merchants to use MiCamp services.

103. Based on the written ISO Agreement between the Parties, MiCamp reasonably expected that PayStream/Fried would refrain from engaging in "Non-Circumvention Conduct" as defined in the ISO Agreement, would refrain from misappropriating MiCamp trade secrets, and would refrain from engaging in unfair competition.

104. On information and belief, PayStream/Fried breached the implied covenant of good faith and fair dealing by failing or refusing to exclusively solicit merchants to use MiCamp services.

105. On information and belief, PayStream/Fried breached the implied covenant of good faith and fair dealing by engaging in "Non-Circumvention Conduct," misappropriating MiCamp trade secrets, and engaging in unfair competition.

106. As a result of PayStream/Fried's breach of the implied covenant of good faith and fair dealing, MiCamp suffered significant damages in an amount to be awarded at trial.

107. MiCamp is also entitled to an additional award of its attorneys' fees and costs related to claims for breach of the implied covenant of good faith and fair dealing and the express terms of the Agreement. *See* Ex. 1, ISO Agreement, ¶¶ 7.1, 9.8; see also A.R.S. §§ 12-341.01 (award of attorneys' fees for breach of contract), 12-341 (award of costs); Ex. 1, ISO Agreement, ¶ 9.7 (applying Arizona law as governing law).

/ / /

FARHANG & MEDCOFF ATTORNEYS

## PRAYER FOR RELIEF

1. WHEREFORE, Plaintiff prays for relief against Defendants as follows:

2. Enter Judgment for Plaintiff and against Defendants on all counts;

3. Award Plaintiff all recoverable damages, including exemplary and punitive damages, in an amount to be proven at trial;

4. Award Plaintiff their taxable costs and reasonable attorneys' fees incurred herein, pursuant to the relevant ISO Agreement, A.R.S. §§ 12-341, 12-341.01, and any other applicable legal right/provision;

5. Award Plaintiff pre- and post-judgment interest at the highest rate allowed by applicable law; and

6. Grant Plaintiff such other relief that the Court deems appropriate.

DATED this 20th day of September 2023.

**FARHANG & MEDCOFF**

By /s/ Roscoe J. Mutz
Ali J. Farhang
Roscoe J. Mutz

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on September 20, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

QUARLES & BRADY, LLP
Kevin D. Quigley (#015972)
Kevin.Quigley@quarles.com
Benjamin C. Nielsen (#029689)
Benjamin.Nielsen@quarles.com

Attorneys for Defendants PayStream, LLC
Jeremy Fried and Nicole Fried

GREENSPOON MARDER LLP
Sharon A. Urias
Daniel F. Nageotte
Sharon.Urias@gmlaw.com
Daniel.Nageotte@gmlaw.com
8585 East Hartford Drive, Suite 700
Scottsdale, AZ 85255

Attorneys for Robert and Jane Doe McDonald

Via Electronic mail:

VENABLE LLP
Ari N. Rothman (Pro Hac Vice Forthcoming)
Jane B. Baber (Pro Hac Vice forthcoming)
ANRothman@venable.com
JBBaber@venable.com

Attorneys for Defendants PayStream, LLC
Jeremy Fried and Nicole Fried

/s/ Deanna L. Thompson

FARHANG & MEDCOFF
ATTORNEYS