# EXHIBIT 1

MiCAMP SOLUTIONS

Address: 4021 North 75th Street
Scottsdale, AZ 85251
Website: www.micamp.com
Email: marketing@micamp.com
Phone: 800.396.0246

MICAMP SOLUTIONS, LLC
INDEPENDENT CONTRACTOR AGREEMENT – ISO

This agreement (the "Agreement") is made and entered into as of this 21st day of March, 2021 by and between: MICAMP SOLUTIONS, LLC dba, MICAMP Merchant Services, a company having its principal place of business at 4021 N. 75th Street, Ste 101, Scottsdale, AZ 85251 ("MICAMP"), and PayStream, LLC, a business or individual located at 1930 Village Center Circle, Suite 3-871, Las Vegas, NV 89134 ("ISO").

WHEREAS MICAMP is in the business of promoting credit and debit card processing services for merchants directly or indirectly (the "**Services**") for and on behalf of Wells Fargo Bank, N.A., Walnut Creek, CA (the "**Bank**"); and

WHEREAS, ISO is in the business of developing and maintaining revenue-generating client relationships and desires to establish an independent ISO relationship whereby it will solicit and refer merchants to MICAMP for Services pursuant to the terms hereof.

NOW, THEN, THEREFORE, in consideration of the mutual promises and covenants herein contained, MICAMP and the ISO hereby agree as follows:

1. **ISO OBLIGATIONS.** The following are, without limitation, the principal obligations of the ISO under this Agreement:

   1.1. **Solicitation.** ISO shall solicit applications from merchants that are interested in procuring the Services (each such merchant that subsequently decides to procure the Services as a result of solicitation by ISO hereunder shall be referred to herein as a "**Merchant**"). Each Merchant shall procure the Services pursuant to a merchant agreement between the Merchant and Bank (together with application material submitted by the Merchant through the ISO, the "**Merchant Agreement**"). ISO shall set its own schedule and objectives in performing under this Agreement. The ISO shall not be a party to the Merchant Agreement. In soliciting potential Merchants, the ISO shall use best efforts to obtain the latest fiscal year business balance sheet and profit and loss statement on each Merchant and personal financial statements on principals of the Merchant. In the course of soliciting potential Merchants hereunder, ISO may not create any liability for MICAMP or Bank except as may be approved by them in writing in advance and shall not cause MICAMP to be in breach of the terms of its agreement with Bank. ISO shall not solicit potential Merchants that (a) are already procuring services from the Bank or otherwise through MICAMP; or (b) are not acceptable under the underwriting guidelines of MICAMP.

   1.2. **Exclusivity.** The ISO Services provided under this Agreement are exclusive to MICAMP. This exclusivity means that ISO will solicit merchants for and use only the Services unless: (i) MICAMP declines to execute a Merchant Agreement with any merchant, (ii) MICAMP is unable to provide a merchant with the specific bank card processing services required by such merchant, or (iii) MICAMP is charged or accused of illegal activity or activity that otherwise threatens the status of PayStream's gaming license. In the event that MICAMP engages in activity that threatens the status of PayStream's gaming license, PayStream may move any Merchants threatened by such action to another processing service. This is a Material term of this Agreement. For purposes of this Agreement, "**Material**" means, when used with reference to information, a fact or circumstance, a course of action, a decision-making process, or other matter, shall be limited to information, facts, and circumstances, courses of action, decision-making processes, or other matters as to which there is a substantial likelihood that a reasonable person would view as essential to the purpose of this Agreement..

MiCAMP SOLUTIONS

Address: 4021 North 75th Street
Scottsdale, AZ 85251
Website: www.micamp.com
Email: marketing@micamp.com
Phone: 800.396.0246

1.3. **Merchant Application and Agreement.** If a potential Merchant is suitable under MICAMP and Bank underwriting guidelines, such as they may be from time to time, ISO will submit an application completed by the Merchant, in a form prescribed by MICAMP together with a Merchant Agreement, executed by the prospective Merchant. MICAMP shall review the credit profile, product and delivery method to determine whether to accept Merchant, which acceptance shall be determined in MICAMP's sole discretion. If MICAMP or Bank request additional information from Merchant, ISO shall use commercially reasonable efforts to obtain such information. ISO acknowledges and agrees that MICAMP and Bank each have the right to decline and/or terminate any Merchant accepted for processing by MICAMP or Bank.

1.4. **Expenses, Tools and Instruments.** ISO agrees to invest in its own business in order to perform under this Agreement. ISO shall be solely responsible for any and all expenses incurred while performing hereunder. ISO shall furnish its own office space and any other facilities, tools, equipment, supplies or services, as shall be necessary for the performance of duties of ISO and each Sub-ISO hereunder.

1.5. **Disclosure of Additional Relationships.** ISO shall not enter into an agreement directly with Bank.

1.6. **Bank Standards and Rules. The** Services and MICAMP are governed by the rules and regulations of the Bank, Visa (available here https://usa.visa.com/support/consumer/visa-rules.html), MasterCard (available here https://www.mastercard.us/content/dam/mccom/global/documents/mastercard-rules.pdf) and other payment card associations or brands as well as other industry or government regulations applicable to the Bank and MICAMP (collectively with the rules and procedures of MICAMP itself, the "**Rules**"). ISO shall comply with the Rules.

1.7. **Branding Obligations Under Rules.** The Rules require MICAMP and ISO and all participants in the electronic payment processing business to comply with certain branding obligations. Consequently, unless the ISO is itself registered with Visa and MasterCard as a Sub-ISO of MICAMP, it must (i) submit all marketing material to MICAMP for MICAMP to review for compliance with the Rules and accept prior to use; (ii) sell the services as MICAMP services and identify them as such; (iii) use the logos and names of Visa, MasterCard, other bank associations or brands, the Bank and MICAMP only as expressly permitted by MICAMP from time to time; and (iv) not make any representation that MICAMP is in the business of leasing equipment.

1.8. **Honesty.** ISO shall provide MICAMP with information that ISO believes, on reasonable inspection, to be true and complete and accurate. ISO will perform its obligations honestly and in a good workmanship manner, with professional diligence and demeanor. ISO will uphold the good name of MICAMP and Bank in the marketplace.

1.9. **Training.** ISO shall provide training to each Merchant and its employees in the Rules applicable to the Services, the operation of any terminal equipment supplied by ISO, MICAMP or Bank, including all requirements relating to the security of cardholder and other non-public personal information.

1.10. **Sub-GENTs.** ISO shall be wholly liable for all acts and omissions of any and all of its employees, agents or representatives (each a "**Sub-AGENT**"). ISO must have a written agreement with each Sub-AGENT that will be substantively identical to this Agreement. ISO shall exclusively bear all liability for compensation of Sub-AGENT or any other liabilities arising in relation thereto. ISO

MiCAMP SOLUTIONS

Address: 4021 North 75th Street
Scottsdale, AZ 85251
Website: www.micamp.com
Email: marketing@micamp.com
Phone: 800.396.0246

guarantees that all of its Sub-AGENTs shall perform in a manner consistent with the terms hereof. ISO shall be responsible for ensuring compliance of its Sub-AGENTs with the Rules. Without limitation, ISO shall indemnify and hold MICAMP harmless from any and all claims made by any Sub-AGENT against MICAMP or Bank or claims made by third parties on account of acts or omissions of Sub-AGENTs. ISO agrees to provide or cause its Sub-Agents to obtain workers' compensation insurance for its Sub-AGENTs and agrees to hold harmless and indemnify MICAMP for any and all claims arising out of any injury, disability, or death of any of employees or ISOs of the ISO.

1.11. **Tax.** ISO shall be liable for any and all taxes payable on the revenue earned by it hereunder. The total amount of income the ISO receives hereunder, if any, shall be reported on an IRS Form 1099 at the end of each calendar year.

1.12. **Adverse Merchant Information.** During and following the Term hereof and so long as ISO is receiving any payments hereunder, ISO shall immediately notify MICAMP if ISO becomes aware of any adverse information concerning the financial condition of a Merchant or any other potential liabilities relating to Merchants.

1.13. **PCI Definition.** For purposes of this Agreement, "**Data Security Requirements**" means the Payment Card Industry Data Security Standard developed by MasterCard and Visa and other similar requirements that apply to entities that transmit, process or store cardholder, transaction card or bank account information, as may be promulgated or amended by a card or electronic payment association or any local, state or federal legislative, judicial or administrative authority from time to time.

1.14. **PCI Compliance.** As a requirement of the Rules, ISO represents and warrants that it and each of its Sub-AGENTs and third-party service providers is, and during the Term of this Agreement will remain, in compliance in all Material respects with all applicable Data Security Requirements, at the expense of ISO. Without liability MICAMP and Bank each have the right to withhold Services to Merchants or cease performing hereunder, in whole or in part, and immediately suspend connectivity to the ISO, if ISO, any of its S Sub-AGENT s, is not in compliance in all Material respects with all applicable Data Security Requirements until individual or entity is in compliance with all applicable Data Security Requirements. ISO shall notify MICAMP of any security breach or data compromise of ISO's computer system or the computer system of any of its Merchants of which ISO has knowledge. ISO shall not, as a matter of course, store, use or disclose any cardholder or other information concerning Merchants, their customers or transactions through the Services; to the extent that any such information comes into possession of the ISO, it shall be kept under lock and key and in an encrypted format, if it is electronic, and shall be kept only pursuant to specific instructions from MICAMP. ISO agrees to comply with all applicable laws and Rules, including, without limitation, the Visa U.S.A. Cardholder Information Security Program ("**CISP**"), the Bank Secrecy Act, anti-money laundering laws, OFAC, the USA Patriot Act and other similar laws. Failure to comply with the foregoing Rules and laws may result in fines and/or penalties and ISO agrees to indemnify and reimburse MICAMP immediately for any fine or penalty imposed due to MICAMP's breach of this section.

2. **MICAMP OBLIGATIONS.** The following are the principal obligations of MICAMP under this Agreement:

2.1. **Merchant Applications.** MICAMP shall provide ISO with applications for Merchants to use in applying for the Services through ISO and MICAMP. MICAMP shall accept completed Merchant applications subject to the conditions set out above.

MiCAMP SOLUTIONS

Address: 4021 North 75th Street
Scottsdale, AZ 85251
Website: www.micamp.com
Email: marketing@micamp.com
Phone: 800.396.0246

2.2. **Fees and Residuals.** MICAMP shall pay fees and residuals (**"Fees"**) to ISO in accordance with Schedule "A" hereto, so long as: (a) ISO is in Material compliance with the terms hereof; (b) MICAMP is receiving its own compensation from Bank in respect of Merchants referred to MICAMP hereunder; and (c) such Merchants are continuing to process transactions through the Bank in conformity with their respective Merchant Agreements. MICAMP reserves the right to offset from Fees: (i) any amounts owed by ISO or any Sub-AGENT to MICAMP or Bank under this agreement; In the event that an amount owed Is disputed, MICAMP will use Its best efforts to promptly resolve such dispute and return such amounts to ISO where appropriate (ii) any revenue paid to ISO but that is uncollected from the Merchant or Bank or that is refunded by the Bank to the Merchant; (iii) account-on-file and IRS charges paid by MICAMP on Fiserv's Omaha platform for six months after the cancellation of a Merchant Agreement or (iv) any losses by MICAMP due to the intentional fraud by ISO. MICAMP shall pay all Fees due to ISO within 60 days of current processing month. In the event that ISO disputes any Fee payment received hereunder, ISO agrees to notify MICAMP within thirty (30) days of the date of payment. ISO waives any claim against MICAMP regarding any payment that it fails to dispute within such thirty (30)-day period.

2.3. **Reporting to ISO.** So long as any Fees are payable to ISO hereunder, MICAMP shall provide a report to ISO setting forth the basis upon which the payment is computed.

3. **REPRESENTATIONS AND WARRANTIES.** ISO represents, warrants and covenants the following to and for the benefit of MICAMP for the Term hereof and so long as ISO is entitled to any Fees hereunder:

3.1. **Independently Established Business.** ISO is engaged in an independently established business, for the purpose of developing and maintaining revenue-generating client relationships with merchants. If the ISO is an individual engaged in a sole proprietorship, the ISO must have duly filed the required certificate of assumed business name and must present a copy of the certificate to MICAMP. If the ISO is a corporation or otherwise incorporated or formed, it must comply with all corporate filing requirements, and must present a copy of its certificate of incorporation to MICAMP.

3.2. **Good Standing.** If the ISO is an individual, the ISO is above the age of twenty-one (21) and of the age of majority in the State where she or she is domiciled and is fully competent to enter into this Agreement. If the ISO is a corporation or otherwise incorporated or formed, it is validly existing and in good standing under the laws of the State where its principal office is located.

3.3. **Full Authority.** ISO has full authority and corporate power to enter into this Agreement and to perform its obligations under this Agreement.

3.4. **Sale of Information.** ISO shall not use, sell, purchase, provide, disclose or exchange credit card, debit card or bank account numbers or Merchant information, or any information collected or received hereunder, to any third party; any and all such information being the sole and exclusive property of MICAMP.

3.5. **No Violation.** ISO's performance of this Agreement will not violate any applicable law or regulation or any agreement to which it is bound as of the date hereof.

3.6. **Enforceability.** This Agreement represents a valid obligation of ISO and MICAMP and is fully enforceable against each party.

3.7. **Compliance.** ISO will comply with the terms of this Agreement, with all applicable Rules, any agreement between MICAMP and a Bank as well as all applicable Data Security Requirements

MiCAMP SOLUTIONS

Address: 4021 North 75th Street
Scottsdale, AZ 85251
Website: www.micamp.com
Email: marketing@micamp.com
Phone: 800.396.0246

3.8. **No Litigation.** Neither ISO, nor its officers and/or directors, are a party to any pending litigation that would have an impact on this Agreement and have never been fined or penalized by Visa, MasterCard or any other association in the credit, payments or banking industry.

3.9. **No Crime.** ISO has never been convicted of a crime punishable by greater than 15 days of incarceration or of a crime of dishonesty. Prior to the execution of this Agreement, ISO has disclosed to MICAMP any and all information that may be relevant to MICAMP in its deciding whether or not to enter into this Agreement, such as prior dishonest or illegal activity by ISO.

3.10. **No Dishonesty**. ISO has never and will not falsify, alter or in any way change information provided by an actual or potential Merchant on an application or otherwise.

4. NON-SOLICITATION AND NON-CIRCUMVENTION.

4.1. **Non-Solicitation.** ISO agrees that, during the Term hereof, so long as ISO is receiving Fees hereunder, and for a period of two (2) years thereafter, neither ISO nor any of its affiliates will directly or indirectly engage in the following conduct, or permit or assist any third party to engage in the following conduct, in any capacity including as an employee, employer, consultant, ISO, principal, partner, stockholder, corporate officer, director, or in any other individual or representative capacity ("**Non-solicitation Obligations**"):

a) **Merchants**. call on, solicit, take away, or attempt to call on, solicit, or take away any of the merchants, customers or Merchants of MICAMP, whether boarded by the ISO or not, and on whom ISO called or with whom ISO became acquainted during their association with MICAMP, either for itself or for any other person, firm, or corporation; or

b) **ISOs.** entice, induce or in any manner influence any person or entity who is, or shall be in the direct or indirect service of MICAMP to leave the same for the purpose of engaging in a business or being employed by or associated with any other business.

4.2. **Non-Circumvention.** Each of the undersigned parties agree that they, and all their affiliated companies, agents, employees, successors in interest or assigns, will not, during this Agreement's term and for a period of two (2) years after this Agreement's termination, engage in Non-Circumvention Conduct with third parties, including, without limitation, suppliers, customers, financial sources, manufacturers, consultants, that have been disclosed to them, directly or indirectly, by the other party to this Agreement. "**Non-Circumvention Conduct**" means contacting, discussing, or transacting business with such third party for the purpose of competing with or replacing the services of the other party, without the prior knowledge and written consent of the other party to this Agreement.

4.3. **Breach.** ISO agrees and understands that any Material breach of its Non-solicitation and/or Non-circumvention Obligations will cause the forfeiture of all Fees owed by MICAMP to ISO until such breach Is rectified, provided that such ISO shall operate In good faith to promptly rectify all breaches. The time period referred to in Section 4.1 shall be stayed and extended during any violation or breach of the terms of this section.

4.4. **Interpretation.** In the event that any court shall finally hold that the time, territory or any other provision of this section constitutes an unreasonable restriction against the ISO, the ISO agrees that the provisions hereof shall not be rendered void but shall apply as to such time, territory and other extent as such court may judicially determine constitutes a reasonable restriction under the circumstances involved. MICAMP and ISO each request that any such court make a determination of what would constitute a reasonable restriction under the circumstances involved and to reform this Agreement accordingly. This provision of this section shall survive

MiCAMP SOLUTIONS

Address: 4021 North 75th Street
Scottsdale, AZ 85251
Website: www.micamp.com
Email: marketing@micamp.com
Phone: 800.396.0246

termination of this Agreement and shall inure to the benefit of MICAMP, its successors and assigns.

5. CONFIDENTIALITY OBLIGATIONS

5.1. **Confidentiality Obligations.** Each party agrees that, during the Term hereof, and for a period of five (5) years thereafter neither party nor any of their affiliates will directly or indirectly engage in the following conduct itself nor permit or assist any third party to breach any of the following obligations (collectively, the "**Confidentiality Obligations**").

a) **Confidential Information.** For the purposes of this Agreement, "**Confidential Information**" means all proprietary, secret or confidential information or data relating to MICAMP, Bank, ISO, and any of their respective affiliates, operations, employees, independent sales organizations, agents, products or services, clients, customers or potential customers, merchants or Merchants. Confidential Information shall include, without limitation, Merchant lists, all Merchant Agreements and all parts thereof, Merchant pricing, customer lists, cardholder account numbers, pricing information, Rules (other than publicly available laws and regulations), acquiring bank or processor relationships, Merchant information, leasing information, financial or other data in any format, computer access codes, instruction and/or procedural manuals, payroll information, human resource or personnel information, business strategies and the terms and conditions of this Agreement. Information shall not be considered Confidential Information to the extent, but only to the extent, that such information is: (i) already known to the receiving party free of any restriction at the time it is obtained; (ii) subsequently learned from an independent third party free of any restriction and without breach of this Agreement; (iii) or becomes publicly available through no wrongful act of the receiving party; (iv) independently developed by the receiving party without reference to any Confidential Information of the other; or (v) required to be disclosed by law. In order for each party to perform hereunder, each party will be obliged to disclose to the other certain Confidential Information concerning the Services and Merchants.

b) **Non-Disclosure.** Each party agrees that he or she will not, except as expressly required in the conduct of its obligations hereunder or as authorized in writing by the other, publish or disclose, any trade secret or Confidential Information relating to Services that the other party may in any way acquire by reason of their association. Certain Confidential Information, such as, by example only, credit cardholder information must not only be kept strictly confidential, but must also be stored under lock and key and in encrypted format as is more fully spelled out in Visa and MasterCard Rules applicable to the business of MICAMP; the ISO shall comply and respect all such Rules.

c) **Legally Required Disclosure.** In the event that a party is required by law or legal process to disclose any of the trade secret or Confidential Information, that party shall provide the other with prompt oral and written notice, unless notice is prohibited by law (in which case such notice shall be provided as early as may be legally permissible), of any such requirement so that each party may seek a protective order or other appropriate remedy.

d) **No Misappropriation of Trade Secrets/No Unfair Competition.** ISO acknowledges and agrees that the names and addresses of MICAMP's (or MICAMP's sponsoring banks' or processors') Merchants (those MICAMP had independent of ISO's referrals) and all other Confidential Information relating to those Merchants and customers, including but not limited to account numbers, leasing information, financial information and special needs, are provided in confidence and constitute trade secrets of MICAMP and that the sale or unauthorized use or

MiCAMP SOLUTIONS

Address: 4021 North 75th Street
Scottsdale, AZ 85251
Website: www.micamp.com
Email: marketing@micamp.com
Phone: 800.396.0246

disclosure of any of MICAMP' trade secrets obtained by ISO during its association with MICAMP constitutes unfair competition. MICAMP acknowledges that all customers and all other Confidential Information relating to Merchants brought to MICAMP from ISO are ISO's customers, and under this Agreement, only ISO can sell products or services to them. If MICAMP engages in the unauthorized sales to these Merchants brought to MICAMP from ISO, this constitutes unfair competition. Each party promises and agrees not to engage in any unfair competition.

e) **Return of Confidential Information.** Upon any termination of this Agreement, Each party shall surrender to the other all Confidential Information and materials furnished to it by the other and any materials developed during the course of the Agreement's term including but not limited to the following: (1) all lists of Merchants and prospective Merchants, (2) forms, office supplies, manuals and any other material previously furnished or made available by one party to the other.

6. TERM AND TERMINATION

6.1. **Term.** The term of this agreement shall be for an initial term of one year commencing on the date signed below (the "**Initial Term**"). Thereafter, this Agreement shall automatically renew for successive, additional one (1) year terms (each a "**Renewal Term**") unless otherwise terminated. The Initial Term together with each Renewal Term shall be referred to herein as the "**Term**").

6.2. **Termination.** Notwithstanding the above, the parties will have the following rights:

a) **Automatic Termination.** This Agreement will automatically terminate if: (i) Visa or MasterCard prohibits MICAMP from providing, or prohibits Bank from allowing MICAMP to provide, the services set forth in this Agreement; (ii) MICAMP ceases to be registered as an independent sales organization or member service provider with Visa or MasterCard; (iii) Bank stops providing merchant services; or (iv) Bank is no longer a member of MasterCard or Visa.

b) **Termination Without Cause.** Either party may terminate this Agreement at the end of the Initial Term or any Renewal Term upon written notice of termination to the other party at least 90 days prior to the end of the Initial Term or any Renewal Term. MICAMP may terminate this Agreement without cause on thirty (30) days prior notice to ISO.

c) **Termination for Cause.** Any party may terminate this Agreement upon the occurrence of an Event of Default, as defined below.

6.3. **Event of Default.** Each of the following occurrences will constitute an "Event of Default" under this Agreement:

a) **Goodwill.** ISO engages in any act or omission that causes actual damage to the reputation, business, or goodwill of MICAMP in which case MICAMP may terminate this Agreement on notice to ISO.

b) **False Representation.** Any Material representation or warranty made by ISO or any of its employees, officers, or directors proves to have been false or misleading in any Material respect as of the date made, then MICAMP may terminate this Agreement with notice to ISO. If any representation or warranty made by ISO becomes misleading In any Material respect after the date made, ISO will correct such representation as soon as possible.

c) **Breach.** Either party fails to observe any Material obligation specified in this Agreement.

MiCAMP SOLUTIONS

Address: 4021 North 75th Street
Scottsdale, AZ 85251
Website: www.micamp.com
Email: marketing@micamp.com
Phone: 800.396.0246

d) **Ability to Cure.** Each of the failures outlined in 6.3(a), 6.3(b), and 6.3(c) have attached to them an ability to cure. If such failure is not cured within 30 days of receipt of written notice thereof from the non-breaching party, then these failures will constitute an "**Event of Default**.".

6.4. **Injunctive Relief.** If either party breaches any of the Confidentiality Obligations of this Agreement, the other will suffer irreparable harm and the total amount of monetary damages for any injury to such party will be impossible to calculate and therefore an inadequate remedy. Accordingly, each party agrees and understands that upon its actual or threatened breach of any of the provisions contained in Section 4.1, each party shall be entitled to the immediate grant of injunctive relief without the requirement of posting a bond enjoining such actual or threatened violation by the other, or any person acting in concert with the other; and that each party may exercise any other rights and seek any other remedies to which they may be entitled to at law, in equity and under this Agreement for any violation of such obligations.

6.5. **Post Termination Fees.** The Fees payable to ISO under this Agreement will be due to ISO for as long as MICAMP is deriving revenue from Bank in respect of any Merchant, unless: (i) this Agreement is terminated by MICAMP due to a breach of the Agreement by ISO, in which cases MICAMP's obligation to pay Fees to the ISO shall terminate.

6.6. **Ownership of Merchants**. The parties understand and agree that at all times: (i) MICAMP has full ownership rights in the Merchant Agreements, (ii) MICAMP may have the right to cause the Bank to assign Bank's rights in all or any of the Merchant Agreements to any third party at any time and for any reason, in accordance with the sponsorship agreement between Bank and MICAMP, and (iii) MICAMP may, at ISO's request (A) assign its rights and obligations hereunder to a third party with concurrent agreement of such third party or (B) pay ISO a single lump sum payment equivalent to the ISO's pro rata share of the net consideration received by MICAMP for its rights in the Merchant Agreements based on the ratio of the Fees and MICAMP's total residuals included in the sale, reasonably calculated by MICAMP, with prior notice to ISO . MICAMP also has the right to terminate its sponsorship with Bank and enter into sponsorship with another Bank at any time and without consent of ISO.

## 7. INDEMNIFICATION AND LIMITATION OF LIABILITY

7.1. **ISO's Indemnification.** ISO shall defend, indemnify, reimburse and hold MICAMP, Bank and their respective affiliates, shareholders, directors, officers, ISOs and employees harmless for all suits, actions, proceedings, losses, claims, liabilities, damages, costs and expenses (including all costs and reasonable attorney's fees) actually incurred in connection with any consultation, negotiation, or actual action, suit, claim, losses or proceeding to which MICAMP shall be made a party by reason of:

a) the acts or omissions of ISO or any Sub-ISO or any of their respective affiliates;

b) ISO's violation of this agreement, applicable Rule, including, without limitation, any and all fines or fees imposed by Visa, MasterCard or any credit card association or payment network caused by ISOs violation;

c) any fraudulent or dishonest conduct or misrepresentation of ISO or any Sub-ISO or any breach by ISO or any Sub-ISO of the terms hereof; or

d) taxes with respect to income received by ISO hereunder.

7.2. MICAMP's Indemnification. MICAMP will defend, indemnify, reimburse and hold ISO (including its respective affiliates, shareholders, directors, officers, managers, and employees) harmless for

MiCAMP SOLUTIONS

Address: 4021 North 75th Street
Scottsdale, AZ 85251
Website: www.micamp.com
Email: marketing@micamp.com
Phone: 800.396.0246

all suits, actions, proceedings, losses, claims, liabilities, damages, costs, or expenses (including reasonable attorney's fees) due to third party claims that result from MICAMP's gross negligence, willful misconduct, or breach of this Agreement.

7.3. **Selection of Counsel.** In the event a party makes any claim under either Section 7.1 or Section 7.2 of this Agreement, such party shall have the right (subject to its right of reimbursement hereunder for competent counsel, of which the indemnifying party may object on grounds of competency and such reimbursement shall be reduced by any amounts spent on competent counsel by the Indemnifying party), but not the obligation, to defend the suit with counsel of its choice. The indemnifying party agrees to cooperate in such an action. The indemnifying party agrees not to settle any claim for which indemnification hereunder may be sought without prior written consent of the indemnified party.

7.4. **Limitation of Liability.** Under no circumstances shall a party be liable for any indirect, consequential or punitive damages hereunder. Under no circumstances shall the aggregate liability of MICAMP to ISO hereunder exceed the aggregate actual amount of Fees actually paid by MICAMP to the ISO hereunder in the three (3) months preceding the event giving rise to liability. This limitation shall not apply to MICAMP's obligations to pay Fees to ISO under this Agreement.

7.5. **Merchant Losses.** One hundred percent of all losses due to Merchant fraud and chargebacks (collectively, "Merchant Losses") incurred by MICAMP or Bank will be borne by MICAMP. Notwithstanding the previous sentence, or any other provision hereof, ISO will be liable to MICAMP for any liability or loss incurred by MICAMP or Bank arising out of ISO's or any Sub-ISO's breach hereof, negligence, fraud, intentional wrongdoing or submission of a Merchant application containing information that was in any way false or misleading.

7.6. **Security Interest.** At any time that ISO is receiving Fees from MICAMP, MICAMP shall have a security interest in any such commission(s) or incentives owed by MICAMP to ISO. ISO agrees that, with notice to the ISO, such amount of Fees may be offset, utilized and applied to the payment of any outstanding accounts receivable balance or to satisfy any other of ISO's obligations to MICAMP or Bank under this Agreement including, but not limited to, the payment of monetary reimbursement to Merchants or sales representatives, or the legal expenses associated with any claims against MICAMP or Bank for which ISO bears actual responsibility .

8. RELATIONSHIPS OF THE PARTIES.

8.1 **Independent Contractor.** It is understood that ISO is an independent contractor, and is not, and shall not be deemed to be, an employee of MICAMP for any purpose. Nothing in this Agreement or the parties' relationship shall be construed to give either party the power to direct and control the day-to-day activities of the other. The general conduct of work performed by ISO and its representatives and/or Sub-ISOs under this Agreement shall be under ISO's sole control. ISO further understands and agrees that ISO shall be fully responsible for all tax obligations related to the payment of all Fees earned by ISO hereunder. ISO is not entitled to workers compensation insurance, unemployment compensation insurance, pension or profit sharing or other benefits or rights of any kind or nature from or through MICAMP or Bank. Nothing in this Agreement or the course of dealing of the parties shall be construed to constitute the parties hereto as partners, joint ventures or as ISOs or employees of one another or as authorizing either party to obligate the other in any manner. ISO shall not (1) bind MICAMP or Bank to any contract or agreement, (2)

MiCAMP SOLUTIONS

Address: 4021 North 75th Street
Scottsdale, AZ 85251
Website: www.micamp.com
Email: marketing@micamp.com
Phone: 800.396.0246

incur any obligation on behalf of MICAMP or Bank, (3) release, assign or transfer any agreement, claim, security or any other asset of MICAMP or Bank, (4) borrow or lend any money in the name of MICAMP or Bank, or (5) submit to any claim or liability related to the Merchant Agreements, allow judgment to be taken or confessed against MICAMP or Bank. ISO, being an Independent Contractor, shall not receive as compensation, or be reimbursed, for any of the following: (i) additional work materials other than provided by the required Rules, (ii) business facilities, telephone, automobile or any other equipment, (iii) any MICAMP or Bank employee benefit, (iv) reimbursement for any other cost or expense incurred by ISO in its sales and marketing of the products and services on behalf of MICAMP or Bank at MICAMP's or Bank's direction.

8.2 **Compliance with Third Party and Legal Obligations.** ISO understands and acknowledges that all independent sales organizations selling or promoting Visa and MasterCard services must be properly registered with Visa and MasterCard, and that all ISOs associated with an MICAMP must therefore comply with the Rules, including all federal, state and local laws that impose requirements on ISO when dealing with merchants pursuant to this Agreement. ISO shall be bound to comply with all Rules. Any failure by the ISO to comply with the terms of this Section shall constitute a Material breach of this Agreement.

8.3 **Independent Obligations.** The parties' independent obligations to comply with these legal and third-party obligations shall not be construed to give either party the power to direct and control the day-to-day activities of the other.

9. GENERAL PROVISIONS

9.1 **Only Agreement.** This Agreement supersedes all prior agreements and understandings between the ISO and MICAMP and its directors, officers, shareholders, ISOs, ISOs or representatives and constitutes the whole agreement between the Parties hereto. ISO also represents that prior to this Agreement ISO was neither employed by MICAMP or any of its affiliates nor has it acted in the role of independent contractor for MICAMP or any of its affiliates.

9.2 **Force Majeur.** Neither party shall be liable in damages or have the right to terminate this Agreement for any delay or default in performing hereunder if such delay or default is caused by conditions beyond its control including, but not limited to Acts of God, Government restrictions (including the denial or cancellation of any export or other necessary license), wars, insurrections and/or any other cause beyond the reasonable control of the party whose performance is affected.

9.3 **No Other Representations.** Except as required by the Rules, this Agreement is the entire Agreement between the parties respecting the subject matter hereof and there are no representations, warranties or commitments other than those expressed herein.

9.4 **Amendments and Waivers.** No modification, amendment or waiver under this Agreement shall be valid unless in a writing and signed by the ISO and an officer of MICAMP.

9.5 **Notice.** Any notices or other communications required or permitted to be given pursuant to this Agreement shall be sufficient if hand delivered or sent by regular or certified mail, return receipt requested, or by Federal Express or other nationally recognized express delivery service, (postage or other commercial delivery fees prepaid), or by facsimile transmission (provided that transmission is confirmed), to MICAMP at its address appearing on the first page hereof and to ISO at the address appearing on the first page hereof or at such other address as a party may designate for such purpose by notice so given to the other party. Hand-delivered notices, notices sent by regular mail and notices sent by facsimile shall be deemed given and received when actually received. All other notices shall be deemed given and

MiCAMP SOLUTIONS
Address: 4021 North 75th Street
Scottsdale, AZ 85251
Website: www.micamp.com
Email: marketing@micamp.com
Phone: 800.396.0246

received on the date of the first attempted delivery as shown on the certified mail or delivery service receipt.

9.6 **Successors and Assigns.** Each party may assign its rights and obligations hereunder to a third party so long as they ensure the assignee agrees to continue to honor the terms of this Agreement. Notwithstanding any other provisions in this Agreement, ISO may assign or sell its rights to its compensation under this Agreement to a third party; provided however, MICAMP shall first have the right to purchase such compensation rights from ISO. In the event ISO seeks to sell its right to compensation to a third party, it shall provide MICAMP with written notice of the Material terms of the third party offer, and MICAMP shall have fifteen (15) days within which to notify ISO if it will match said third party offer. If MICAMP elects to match the third-party offer, ISO shall sell its rights to compensation to MICAMP. In the event MICAMP does not elect to exercise this right of first refusal, ISO may sell ISO's compensation to the third-party offeror on the same terms and conditions as set forth in the written notice to MICAMP.

9.7 **Governing Law, Choice of Law and Forum.** This Agreement shall be construed in accordance with and governed by the laws of the State where MICAMP has its principal place of business identified on the first page hereof without regard to conflicts of law principles. Any legal actions or proceedings brought to enforce the terms of this Agreement shall be filed in a court of competent jurisdiction within such state in the county where MICAMP has its principal place of business identified on the first page hereof.

9.8 **Attorney Fees.** As a consequence of any action, suit or proceeding brought under this Agreement, the prevailing party shall be entitled to its costs, expenses, and if law permits, its reasonable attorney's fees..

9.9 **Scan Signature.** This Agreement may be executed in counterparts, each which shall be deemed an original, but all of which together shall constitute one and the same instrument. This Agreement may be executed by fax or the exchange of scanned copies of signed copies hereof, provided that ISO provides MICAMP with an original signature within ten (10) days of the electronic copy.

9.10 **Severability.** The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect.

9.11 **Construction Capacity and Counsel.** For purposes of construction, this Agreement will be deemed as being drafted by both parties, equally. ISO is executing this Agreement in its/his/her capacity as a business and not as an individual consumer. ISO has had opportunity to seek legal advice prior to the execution hereof.

IN WITNESS WHEREOF, this Agreement is executed by duly authorized officers of the parties and shall be effective as of the date appearing on the first page hereof.

ISO (PayStream, LLC)
Jeremy Fried
Name: Jeremy Fried
Title: Owner/Operator
Date: 3/21/2021

MICAMP SOLUTIONS, LLC
Name: Micah Kinsler
Title: President
Date: 3/21/2021

MiCAMP SOLUTIONS

Address: 4021 North 75th Street
Scottsdale, AZ 85251
Website: www.micamp.com
Email: marketing@micamp.com
Phone: 800.396.0246

Business Name:

ISO INFORATION:

| | | | | |
|---|---|---|---|---|
| Home Address | | | | |
| City | State | Zip | Social Security Number | |
| Business Phone | Cell Phone | Home Phone | Fax Number | |
| Email | | | | |

MiCAMP SOLUTIONS

Address: 4021 North 75th Street
Scottsdale, AZ 85251
Website: www.micamp.com
Email: marketing@micamp.com
Phone: 800.396.0246

ISO shall be paid their respective split of all net residuals earned on all low and high-risk accounts boarded by ISO, effective as of the date of this Schedule A addendum. All accounts boarded by ISO shall be paid 100% of the first $125,074.93 residuals received by MiCamp. Thereafter the splits of this Addendum shall become effective.

**Sales Program - Schedule A – First Data Fiserv**

RESIDUAL COMPENSATION PLAN

All accounts boarded by ISO shall be paid a 85% split based on residuals received by MiCamp.

| **Program** | **ISO Cost** |
|---|---|
| Omaha / North Authorization Fee (Visa/MasterCard/Discover/Amex) | $0.01 |
| Omaha / North Ticket Fee (Visa/MasterCard/Discover/Amex) | $0.01 |
| IRS Fee/ Reg product fee | $1.00 a month |
| AMEX OPT BLUE | 0.10% |
| Address Verification Service (AVS) Fee | $0.01 |
| Batch Header Fee | $0.05 |
| Chargeback Fee | $12.50 "what if fee" |
| Retrieval Fee | $5.00 "what if fee" |
| Accessone fee | $1.00 monthly |
| Omaha merchant statement fee | $4.00 monthly |
| North merchant statement fee | $0.00 |
| Monthly Minimum | $0.00 |
| Voice Authorization | $0.52 |
| Omaha on file fee | $0.00 |
| North on file fee | $4.50 |
| TIN invalid fee | 0 |
| Interchange, V/MC/D Assessments and Access Fee pass through | 0.01% (1 basis point) |
| Debit Card Access Fee | $0.00 |
| Debit Card Fees (pass through of network fees plus transaction fee) | $0.02 |
| EBT per item fee | $0.01 |
| Clover Service Fee | $27.30 |
| Non-PCI monthly | $10.95 |
| Authorize.net | $8.00 a month $0.08 per trans |
| NMI Gateway monthly | $7.00 a month $0.07 per trans |
| Charge Anywhere | $4.00 activation fee. $4.00 a month $0.03 cent per trans |
| Transax Gateway | $5 a month .05 per trans |

MiCAMP SOLUTIONS

Address: 4021 North 75th Street
Scottsdale, AZ 85251
Website: www.micamp.com
Email: marketing@micamp.com
Phone: 800.396.0246

**ALL EQUIPMENT MUST BE PAID FOR BY MERCHANT OR ISO PRIOR TO SHIPPING**

ISO shall be paid their respective split of all net residuals earned on all low and high-risk accounts boarded by ISO, effective as of the date of this Schedule A addendum.

**Sales Program - Schedule A – High Risk**

All accounts boarded by ISO shall be paid a 60% split based on residuals received by MiCamp.

| Program | Agent Cost |
|---|---|
| Non-PCI monthly | $6.50 - $19.95 a month |
| PCI compliant | $0.75 - $7.00 a month |
| Authorization Fee (Visa/MasterCard/Discover/Amex) | 0.02 - $0.06 |
| IRS Fee/ Reg product fee | $1.00 - $3.00 a month |
| Bin Fee (CBD) | 35BPS – 100BPS |
| Address Verification Service (AVS) Fee | $0.01 - $0.03 |
| Batch Header Fee | $0.05 |
| Chargeback Fee | $25 - $35 "what if fee" |
| Retrieval Fee | $5.00 - $10 "what if fee" |
| Voice Authorization | $0.52 |
| Account on file fee | $6.50 |
| Interchange, V/MC/D/A Assessments and Access Fee pass through | 0.01% - $0.05% (1 -5 basis points) |
| Transaction Fee (CBD) | $0.00 – $0.35 |
| Authorize.net | $8.00 a month $0.08 per trans |
| NMI Gateway monthly | $7.00 a month $0.07 per trans |
| Charge Anywhere | $4.00 activation fee. $4.00 a month $0.03 cent per trans |
| Transax Gateway | $5 a month .05 per trans |

**ALL EQUIPMENT MUST BE PAID FOR BY MERCHANT OR ISO PRIOR TO SHIPPING**

ISO

Jeremy Fried

Name: Jeremy Fried
Title: Owner/Operator
Date: 3/21/2021
Business Name: PayStream, LLC

MICAMP SOLUTIONS, LLC

Name: Micah Kinsler
Title: President
Date: 3/21/2021