**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MiCamp Solutions LLC, | No. CV-23-01842-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| PayStream LLC, et al., | |
| Defendants. | |

Plaintiff MiCamp Solutions LLC believes its former employees, Defendants Jeremy Fried and Robert McDonald, engaged in misconduct during and after their employment. MiCamp also alleges it entered into a contract with PayStream LLC, a company associated with Defendant Fried, but PayStream subsequently breached that contract. The complaint contains no specific facts regarding the events underlying MiCamp's claims. Instead, the complaint provides basic background information and then recites the elements of each claim. The lack of supporting factual allegations requires the complaint be dismissed.

## BACKGROUND

MiCamp "is in the business of promoting credit and debit card processing services for merchants." (Doc. 15-1 at 2). The complaint does not provide any additional explanation of MiCamp's business but it appears MiCamp locate merchants who wish to obtain payment processing services from larger entities, such as Wells Fargo. As of some unidentified date, Fried was the Chief Technology Officer for MiCamp while McDonald was the Director of Software Engineering. In those positions, both Fried and McDonald

had access "to sensitive and highly confidential business and technology information." (Doc. 15 at 3-4).

On an unidentified date, Fried left his employment with MiCamp. Upon leaving, Fried retained some of MiCamp's confidential information. The complaint does not identify what information Fried retained. As for McDonald, he remained at MiCamp after Fried left. On an unidentified date while McDonald was still working for MiCamp, Fried "solicited McDonald to provide work for" a separate company. (Doc. 15 at 5). McDonald accepted and "utilized MiCamp's time and resources to provide services" to that company. (Doc. 15 at 5). On an unidentified date, McDonald left MiCamp's employment. McDonald allegedly retained MiCamp's confidential information but, as with Fried, the complaint does not identify what information was retained.

On March 21, 2021, MiCamp and an entity known as PayStream LLC entered into a written agreement. The agreement stated PayStream would locate merchants "interested in procuring" payment processing services from MiCamp. (Doc. 15-1 at 2). The agreement promised MiCamp would pay PayStream based on the number of merchants PayStream located. As part of the contract PayStream agreed it would not "call on, solicit, take away, or attempt to call on, solicit, or take away any of the merchants [or] customers" of MiCamp. (Doc. 15-1 at 6). According to MiCamp, the agreement was binding on PayStream as well as Fried because "Fried was the alter ego of Paystream." The complaint does not allege any facts supporting this alter ego relationship. (Doc. 15 at 6).

In May 2021, MiCamp and PayStream entered into a second written agreement "related to the licensing of certain source code and/or software" owned by a nonparty. (Doc. 15 at 8). The complaint alleges PayStream "fraudulently misrepresented material terms of that agreement" to MiCamp, including the purchase price. (Doc. 15 at 8). No details are given regarding these misrepresentations. Moreover, there is no explanation how PayStream was able to misrepresent the terms of an agreement that MiCamp itself signed. Most importantly, the complaint does not assert any claims related to this second written agreement and why it is referenced in the complaint is a mystery.

Based on these limited facts, MiCamp alleges claims for breach of fiduciary duty against Fried and McDonald. The complaint bases these claims on unidentified actions taken while Fried and McDonald worked for MiCamp. MiCamp also alleges a claim for tortious interference against Fried based on Fried's contact with McDonald while McDonald still worked for MiCamp. Finally, MiCamp alleges claims for breach of contract and breach of the covenant of good faith and fair dealing against PayStream and Fried. The contract-based claims are based on PayStream and Fried allegedly violating the written agreement requiring PayStream locate merchants for MiCamp. The complaint alleges the written agreement was breached in numerous ways but, as with all the other claims, there are no factual allegations identifying the particular actions of PayStream and Fried that breached the agreement. McDonald answered the complaint while PayStream and Fried filed a joint motion to dismiss.

## ANALYSIS

Resolving the motion to dismiss requires the Court accept all of MiCamp's factual allegations as true and construe them in the light most favorable to MiCamp. While "detailed factual allegations" are not required, "labels and conclusions" together with "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To avoid dismissal, MiCamp's complaint needed to contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The present complaint does not satisfy these requirements as there are so few factual allegations it is impossible to know why, exactly, MiCamp is suing PayStream and Fried.

### I.   Tortious Interference

MiCamp asserts a tortious interference claim against Fried. To state such a claim, MiCamp was required to allege facts showing five elements: "the existence of a valid contractual relationship or business expectancy," Fried knew of "the relationship or expectancy," Fried's actions induced or caused "a breach or termination of the relationship or expectancy," MiCamp suffered damage as a result, and Fried's interference was

"improper as to motive or means." *Neonatology Assocs., Ltd. v. Phoenix Perinatal Assocs. Inc.*, 164 P.3d 691, 693 (Ariz. Ct. App. 2007). The final element requiring the interference be "improper" is crucial and Arizona courts use a seven-factor test to differentiate between proper and improper interference. *Id.*

MiCamp bases its tortious interference claim on allegations Fried knew McDonald was MiCamp's employee when Fried "solicit[ed] McDonald to perform services for" a nonparty. (Doc. 15 at 12). As best as the Court can tell, MiCamp believes it constituted tortious interference for Fried to offer McDonald alternative employment while McDonald was still employed by MiCamp. Even assuming Fried's action satisfied the first four elements of tortious interference, there are no allegations showing Fried's actions were "improper as to motive or means." *Neonatology Assocs.*, 164 P.3d at 693. Absent additional facts, such as the presence of an agreement prohibiting such actions by McDonald or Fried, the act of soliciting McDonald to work elsewhere does not qualify as tortious interference. *See Bar J Bar Cattle Co. v. Pace*, 763 P.2d 545, 549 (Ariz. Ct. App. 1988) (recognizing action motivated by "legitimate competitive reason" undercuts tortious interference claim). The tortious interference claim must be dismissed.

## II.   Breach of Contract

MiCamp asserts a breach of contract claim against Fried and PayStream based on the contract where PayStream promised to locate merchants "interested in procuring" payment processing services from MiCamp. (Doc. 15-1 at 2). That contract was signed only by PayStream but Fried is named in this count based on MiCamp's alter ego theory. MiCamp did not allege any facts showing how Fried might qualify as PayStream's alter ego and, therefore, the breach of contract claim against Fried fails at the outset. But focusing on PayStream as the proper defendant for this claim does not help MiCamp because the complaint contains insufficient factual allegations to state a plausible claim.

A breach of contract claim requires allegations identifying the contract, the actions constituting breach of that contract, and the damages suffered. *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975). Accepting as true that MiCamp and PayStream had a contract,

there are no factual allegations regarding how PayStream breached the contract. Instead of factual allegations, the complaint simply makes conclusory statements. For example, the contract prohibited PayStream from misappropriating MiCamp's trade secrets. MiCamp alleges PayStream breached that requirement by misappropriating MiCamp's trade secrets. (Doc. 15 at 16). There are no factual allegations identifying the trade secrets at issue or the actions PayStream took that constituted misappropriation. Without any supporting factual allegations, the breach of contract claim must be dismissed.

### III.  Breach of the Implied Covenant of Good Faith and Fair Dealing

MiCamp alleges a claim against PayStream and Fried for breach of the implied covenant of good faith and fair dealing. Again, Fried is named in this claim based on MiCamp's alter ego theory but without facts establishing a plausible basis for an alter ego relationship, the claim against Fried fails. As for this claim against PayStream, it must be dismissed because MiCamp appears to misunderstand how this type of claim operates.

The complaint identifies the claim for breach of the implied covenant as based exclusively on actions contrary to explicit provisions in the written contract. Straightforward breaches of the contract's written terms cannot be the basis for a claim of breach of the implied covenant of good faith and fair dealing. That is, a claim for breach of the implied covenant of good faith and fair dealing requires factual allegations the parties had a contract and the defendant exercised "express discretion in a way inconsistent with" the plaintiff's reasonable expectations or by allegations the defendant acted "in ways not expressly excluded by the contract's terms but which nevertheless bear adversely on the [plaintiff's] reasonably expected benefits of the bargain." *Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 435 (Ariz. Ct. App. 2002). MiCamp has not alleged any facts supporting either alternative.

The complaint contains conclusory statements that PayStream breached the implied covenant by engaging in conduct expressly prohibited by the contract. For example, MiCamp alleges the contract prohibited PayStream from misappropriating trade secrets but PayStream did so anyway. To the extent that occurred, and if supported by sufficient

factual allegations, MiCamp would have a claim for breach of contract, not a claim for breach of the implied covenant of good faith and fair dealing. The claim for breach of the implied covenant of good faith and fair dealing must be dismissed.

### IV. Leave to Amend

MiCamp filed its original complaint in state court. That complaint contained no meaningful factual allegations. After the case was removed, MiCamp filed an amended complaint, but again failed to include meaningful factual allegations. Prior to responding to the complaint, PayStream and Fried conferred with MiCamp regarding the viability of the amended complaint. MiCamp did not believe the amended complaint was insufficient, leading to PayStream and Fried filing the motion to dismiss.

Despite refusing to withdraw any claims during the parties' meet and confer, MiCamp's response to the motion to dismiss immediately abandoned five claims. And as set forth above, the claims MiCamp did not formally abandon were not supported by any factual allegations. Given this history, MiCamp will be given one opportunity to amend its complaint to state claims for relief. Should MiCamp choose to amend, it must include significantly more relevant facts than it has set forth in any prior pleading. Reciting the elements of various claims, with no factual elaboration, will result in dismissal without leave to amend.

Finally, McDonald opted to answer the complaint instead of filing a motion to dismiss. However, there are no meaningful factual allegations supporting the claim against McDonald and that claim will also be dismissed with leave to amend. *See Silverton v. Dep't of Treasury of U. S. of Am.*, 644 F.2d 1341, 1345 (9th Cir. 1981) (stating district court "may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants").

Accordingly,

**IT IS ORDERED** the Motion to Dismiss (Doc. 19) is **GRANTED**. The Amended Complaint (Doc. 15) is **DISMISSED**.

1   **IT IS FURTHER ORDERED** Plaintiff shall file an amended complaint no later
2   than **February 9, 2024**.
3   **IT IS FURTHER ORDERED** the Clerk of Court is directed to enter judgment in
4   favor of Defendants in the event no amended complaint is filed by **February 9, 2024**.
5   Dated this 30th day of January, 2024.

Honorable Roslyn O. Silver
Senior United States District Judge